Thank you, Your Honors. May it please the Court, Ray Cardozo for the Appellant Genesis Merchant Partners. I want to start right away with the remedy. Yes, that's what I'm interested in too, because your reply brief seems to be slightly different than your opening brief in terms of what you want. What do you want us to do? So, at a minimum? No, what do you want us to do? What I want you to do is to award, enter judgment for Genesis in the amount of $2.556,788 plus 10% interest from... With no offsets for the indemnification. That's an analysis that includes an offset based on the evidence at the bottom. Do we have any basis on this record to enter a judgment as opposed to simply sending it back to the District Court and saying, you erred? There should be an offset for the improperly withheld indemnifications. We don't know what they are on this record. You handle that. Yeah, you do, Your Honor. Let me just be clear. The at a minimum part was, at a minimum, there should be a revamp to do just that. But Genesis contends the record actually permits this Court to avoid that and enter judgment because, remember... Can I do that from the briefs and the record? How can I do that from the record? If you look at excerpts of record 242, their accountant testified that the... There's all this talk about these undisclosed liabilities that were asserted. But their accountant testified that the sum total of everything that had been paid as of June 24, 2013, three years after all of this, was $241,252. Well, that may be, but the judge made no findings on that, did he? The judge, no. The judge failed to perform the proper... So you're asking us, in effect, to make a finding based on what you think is undisputed evidence. But, you know, we're appellate judges. You may end up with exactly this result, but why not... Right now, you've got a worse result, so you can't want the status quo. Why not send it back to the trial judge and say, make the calculations. If you need to do it on the record, that's fine. If they think that there's disputed issues, that's fine. So as Judge Preggerson said before, why not take a victory at the trial court as opposed to asking us to give it to you? I appreciate the appellate court's reluctance. I understand that that's not what you ordinarily do. The reason why, and that's why I started with that in mind. Yeah, okay, that's your home run. But the reason why I think it's important, why we think it's appropriate in this case, is you've got to remember, this is a defaulting debtor that has stiffed our client for years. And they had a full trial on this point. But you'll get it. If you're right, you'll get a judgment and you'll get it with interest. All we could do is instruct the court to enter a judgment anyway. We don't enter judgments. And so you'd still have to go back to the trial court to get them to enter the judgment. If the facts are undisputed, as you say, go back to the trial court and get them to enter the judgment. But remember, their accountant testified on the point of the undisclosed liabilities, and they didn't even cross-examine them. That's why I say this point is absolutely undisputed. Although, to be fair, you took the position below, at least as I read the record, that they were entitled to no offsets at all because that was something between them and Mason, who had no money. No, actually, Your Honor, that's not correct. And I'll get you the cite in my rebuttal. But at the close of evidence, the district court asked the parties to submit supplemental briefing. And Genesis quite clearly asserted, you give them credit for all of the liability. What had been your position up until that point? As I read the opening, it was you owe us the amount of the note, and if you want to have a fight with Mason about indemnification, you can. Yeah, but they also took the position that they contested the issue of breach. Sure. So that's why they resisted the notion of an offset. They're disputing, you know, it's a trial. They're disputing liability. I'm not criticizing you. All I'm just saying is that, to me, the record is not so crystal clear. You may be right. The district judge knows the record. Go back and say to him, this is what occurred. Judge Klausner will say, yeah. Enter a judgment for us in this amount. Again, the reason why the home run is the fair and appropriate outcome in this case. We've had a promissory note that hasn't been paid for years. And I understand your position. They had some amount of offset which wasn't near the amount of the note. I have a question on that one, though. As I read the record, the note was assigned to you from Mason, correct? It was assigned to Genesis. Wasn't there some obligation of Mason under the note that it was only security for some amount? Yes. What amount was that? It was the amount that Mason owed to Genesis. Right. So the number we have quoted, when you perform— I thought there would be roughly a million dollars of credit against that. Am I wrong? No, because the interest kept running. So the number we have quoted in the brief that we're asking for, the amount of the debt that Naries owed to Nascent was approximately $3 million. The net of the excess liabilities is about $91,000. So you come up at about $2.89 million. The amount also undisputed that Nascent owes to Genesis at that time is less than that, $2.556 million. That's how you get the calculation. Nobody told me there would be math involved. We spelled it out in the brief to make it easy for you. I think it's at page 42 of our opening brief, or 43. But again, the reason why this is—we should have to go back— is remember that the law of California is, once you discover the misrepresentations, if you want out on the note, you have to return the company right then and there to preserve that remedy. Otherwise, you waive. But this is not a misrepresentations case. This is—they turned down the remedy of rescission. In my mind, this is a breach of contract case. Nascent had made certain representations to Naries, and it promised to indemnify them if the representations were not true. One of the representations was there's no undisclosed debt other than that we disclosed. It turns out there is disclosed debt. It's a breach of contract case. They owe an indemnification, and it's offset against the note. We're not worried here about fraud or misrepresentation. Yeah, absolutely, Your Honor. But the point I'm trying to make is when you're in the position of chasing a defaulting debtor, and you have to file the lawsuit, then you have to go to trial, and the district court is thrown off the scent through the kind of arguments that were made that led to this erroneous judgment, and they don't dispute the amount of the liabilities, they don't dispute the amount of the debt, why should they get another shot? There's a well-settled principle in law that trial is your one shot to put on your best case, and if you don't get it done, you're not entitled to a remand on that issue. They gained this process. They were given the opportunity to rescind, and they didn't. The evidence of the record was undisputed at the point they made that election to take the contract. So I get the appellate court's reluctance. You normally send it back when the district court has whiffed and failed to engage in this kind of analysis, but the home run is appropriate in this case because of the nature of the fact that they've strung along a lender for now five years. They've also held the company the whole time, so who knows what assets are going to be available to us after. It's very different if we got a judgment when we were entitled to at trial. They've had two years to hold this company, and we're still going to be in the chase position after the remand, etc. I think under those circumstances, when they didn't even cross-examine the accountants on the liabilities, the debt was undisputed, that figure. Why should they get another shot? So what's your position on the attorney's fee award? Because Genesis, upon the reversal, becomes a prevailing party as to Neres and Targa, and the court made a single unapportioned award that the court was very clear is not apportioned. So we'd have to vacate it. You'd have to vacate it. And then you would go back to the district judge, would you not, and seek fees? Yes. In fact, there should be a direction. I'm not sure there's a direction, but since you have to go back to the district court and seek fees, you're going to have to go back there and engage in a proceeding anyway, aren't you? Yes, but it's a little bit different. Again, because of the moving target we've been fighting, the record in this case establishes our right to recover, and just like there's a difference between sending it back for a new trial on damages versus sending it back to a new trial on liabilities, there's obviously ---- Well, no, you've misunderstood me. I'm not suggesting that we would remand it for a new trial. I'm saying we would remand it for the judge to calculate the offset on the basis of the record in this case. That's, you know, that's different than saying you've got to go through a new evidentiary proceeding and start the case all over again. Yeah, fair enough. I appreciate where the court's coming from. That's where the add a minimum. Again, I come back to that. The add a minimum comes in in my commentary. You know, we're going back for fees, going back for damages offset, fair enough.  You have. The entitlement. I'll reserve my remaining time for rebuttal. Yeah, what's your name? Ray Cardozo. Ray Cardozo. Thank you, Judge. A good name for a lawyer to have. Almost as good as Callahan. Almost as good as what? Callahan. But not as good as Crandall, I guess. May it please the court, Charles Burke for the appellees. Good morning. Good morning. I can't imagine anything worse for an appellee's counsel than to start a morning hearing colloquy about what's the appellate remedy between the appellant and the court. And so my argument today is going to be a little bit different from what I expected, and I'd like to start. First, I want to start with an issue of atmosphere that is brought in response to the court's questions but not by the court itself. I want to emphasize that nobody I represent in this case ever promised to pay Genesis a dime. We are not the debtor. Further, I am terribly disturbed every time I hear or see in a brief the righteousness of Genesis. And I must say, we tend to ignore the rhetoric also, which is why I was trying to. So you don't need to defend your client. What you need to do is deal with what I think is a mistake by the district judge in relieving you from all liability on your obligation to nascent. So tell me why that wasn't a mistake. That is exactly where I want to go. Tell me why that wasn't a mistake. Tell me why you get to keep the company and not pay for it too. I think the only way Your Honor could have gotten there is to have discarded the district court's conclusion that under California law, a material breach justified a termination of performance. But that's incorrect, is it not? When you have a material breach based on fraudulent inducement, you can rescind the contract, you can give the company back, and they can give you back the money you paid, or you can affirm the contract as you did and seek damages. Or you can say... But you think you get to keep the company and not pay for it too? No, not exactly. Your third option is to say, I give up. I will no longer perform any obligation under this contract. And doesn't the other side get to say the same thing? Give me back what I sold you? No, in that circumstance, the other side does exactly what it alleged here in the district court, and that is it claims that the defendant, who refuses to perform the contract on the ground of material breach, has received unjust enrichment. And the defendant makes an un... Unjust enrichment, the California cases tell us, I'm not a California lawyer, but I read them, doesn't apply when you have an express contract. You've got an express contract, so forget about unjust enrichment. There's no unjust enrichment claim that survives in this case. It may be barred in this case, but that's Genesis's problem, not mine. At the end of the day, your position is, we get to keep... They refuse to indemnify us in some amount. Now, the testimony was it was about $250,000. Let's just accept that for the moment. That's the accountant's testimony. No way is that undisputed. Let's just accept that for the moment, $250,000. It's not $2.5 million. It's not the amount of the note. $2.5 million, I agree. So, Nason stiffed us for $250,000, so we get to stiff them for $2.5 million. Why don't we just subtract the $250,000 from the $2.5? We have an offset. It's like the world's simplest contract case that's turned into a mishegas, if I can use the word. If the case is reducible to the exclusive remedy of the offset, your Honor would be correct. It is not. Doesn't the contract say that's what the remedy is? The contract says your only remedy will be to get indemnification. Your only affirmative remedy is to get indemnification. It does not say you have no defense of fraud. It does not say you have no defense of material breach that allows you to cease performing. And there is not a case cited by Genesis in California law that says an exclusive remedy provision bars a defense. There are plenty of cases that say when enforceable, they bar claims for money. Do you have any California case that involves a contract? I understand a contract where I'm performing services for you and you're paying me and there's a material breach and I can stop performing them. Do you have any California case where somebody got a valuable piece of property from somebody else and then got to keep it without paying for it? You follow the line of Friedman versus the record. Is there a case that says that? There is not in that line anything that says you get to keep that as such. What it does say is under those circumstances, the party who committed the material breach may have an action for unjust enrichment. And I will concede something because I see it's a sticking point for the court and I think the weakest part of my case and probably an error is the district court's one-line statement that says because there is an express contract on this point, there is no claim for unjust enrichment. I actually don't agree with that because there is no express contract that covers the question of what happens in the unjust enrichment circumstance where there has been a breach. The exclusive remedy provision certainly doesn't cover that either way. So yes, we relied on it. Yes, it's one of the reasons we won our home run in the district court. I wasn't able to find in writing the red brief any place I could go beyond that kind of bald statement in the case law that says why that in itself was an absolute bar to the unjust enrichment claim. There are other bars. I think the district court should be affirmed on unjust enrichment for other reasons. But if you follow Friedman versus the rector itself, which involves the refund of a deposit, and many of those cases are refund of deposit in a real estate rising market. How does the seller get to keep that when the seller sold the property for more money to somebody else after the original buyer defaulted? Unjust enrichment. Was there an express provision in that real estate sales contract? Every one of those cases has an express provision. And the appellant is right about this. It says if the buyer defaults, the seller gets to keep the money. That has never been a bar to the court saying no, the unjust enrichment principle of Friedman versus the rector applies. If they got something valuable out of not having the company or out of not having your transaction closed, I got into my case before I got into those cases, then they get to go under Friedman versus the rector and say, all right, we have a $10,000 deposit. Even though we sold that other property for $50,000 more, we had to pay so much bigger a commission that we actually lost something on this deal. So we get to keep it. I don't want to get too far into those cases before I get into this one. There is a huge difference between unjust enrichment and offset. And it's this. In the offset case, we have entitlement to some offset. The district court said at one point, and nobody's ever said this is clearly erroneous, there should have been $850,000 booked as accounts payable. The district court said we have resolved either by payment or by compromise more than half a million. That's a whole lot more than $150,000 plus $91,000 that the accountant testified. You've got a negotiable and you've got a promissory note. Right. And your contention is that you sign a promissory note and promise to pay somebody a certain amount of money. Your contention is we didn't. Well, in this circumstance, somebody did. Neary's did, right? As far as I'm concerned. I mean, at least the collective defendant. The nascent did. Right. That is absolutely nothing more than a completely failed loan that a dishonest creditor. Oh, no. Wait a minute. No, wait a minute here. If you don't want to be able to stand up and say he shouldn't disparage your clients, then don't disparage his. Just talk about the facts. And the facts are. The district judge did find fraud, Your Honor. Huh? The district judge did find fraud. No, the district judge found that the representations, I think, were not correct but were not intentionally incorrect. That's not true either. The district court, for fraud purposes, accepted it was negligent misrepresentation. Right. For contract purposes, if you go through the facts, the district court found. And that's, by the way, that's the most mystifying finding of a district court I've seen in a long time. You have a contract that says. For contract purposes. You can't have fraud for contract purposes for breach of contract. You can get out of the contract because of fraud. You decided not to. Yes, Your Honor. For contract purposes, there is no such thing as fraud. There is only breach of contract. Yes, Your Honor, under this contract, because the exclusive remedy provision does not apply. That's where you're in trouble in this case, and that's why we're here, because the district judge messed that up. They made a bunch. They said, here are our representations. If they turn out not to be true, we will indemnify you. Now, how that can be a fraud, I don't have a clue in the world. It's actually a fraud in two ways. First place, they make the representations. Those representations are in the contract, but they're consistent with P. Ann Cone's representation. Right, but you have waived the right to get out of the contract. No, we have not. You have. The judge offered you the ability to rescind. Your Honor is correct. Right, so you're inside. No, just let me finish. Let me finish. Go ahead. I get to do this first, and then you get to answer. You got a contract, and they say, there are no debts other than the ones we've disclosed. If it turns out that there are, we'll indemnify you for them. Now, how can that statement be fraudulent? Did they not intend to indemnify you when they made the statement? That's actually part of the fraud, because nascent had neither the will nor the capacity to perform on the indemnity obligation when it made that representation. And therefore, you could get out of the contract if you want, but if you're going to keep the contract, your remedy is in contract. It's not in fraud. And your remedy is to get damages from the breaching party. And your Honor continues to speak to this from the perspective of our remedy. This is not our remedy. We didn't sue anybody. This is our defense. That's true. And fraud is incredibly pertinent, because if your Honor thinks on its face that the exclusive remedy provision applies to bar a defense, it does not apply when one of two circumstances. I'm saying something quite different. I'm saying something quite different. I'm saying you can raise a fraud defense. Fraud defenses entitle you to void contracts, to rescind contracts. But fraud defenses, once you waive that, once you say I don't want to rescind, your defense is breach of contract. That's what you're saying. In fact, you're saying there was a material breach, and therefore I don't have to perform. Correct. And then we circle back to — You don't get to circle back. That's my problem. You walked away from the fraud. You don't get to circle back to it once you're back in a contract case. But under California law, we do. We do have the absolute right, if the breach is material, to say we shall no longer perform. Now, you sue us for nonperformance. And if the breach is material, we had a right to stop. We do not lose breach of contract. The frustrated party who breached the contract first, who incurred the failure to perform of the other side, saying I'm sorry, material breach, we won't do this anymore, gets to say under Friedman v. Rector, we now get a right to unjust enrichment. And this takes me back to a critical point. So you would have us remand for the judge to have a trial on unjust enrichment? I would have you affirm. But if we go down the line that Your Honor is taking, and it is an inevitable reversal, the difference between unjust enrichment and the tact that Your Honor is taking is this. Under unjust enrichment, they were unjustly enriched to the extent that the company had value when we refused to perform, and they might have been able to execute their debt against the company. We think that was darn close to nothing. If this case is remanded for unjust enrichment purposes, that's what the trial is about. What they want to say is that our accountant's testimony, which is an incomplete view of the damage done on which we claimed breach, because it's only what the accountant could get on the books. It doesn't include things like having to send Alvarez to the bank to get cash so the tax man won't padlock the business. That's not on the books. Those are cash transactions. There are lots of things that it doesn't include. That's not what the case was tried about, even from our perspective, even as an offset case. So the district court's findings about what, in effect, was the material breach, the district court never did an offset calculation, tells you that if we actually had an offset trial, if we're forced into that mode, it is very, very different from the accountant's testimony. And I would like to conclude by saying, hey, it's not just about the money. That's not why we have this defense. Whether it's $91,000, whether it's another $34,000 in uncollectible accounts receivable, it's a Mexican tax lien that frustrated all the business of this company for three years. That's a good deal more than just an amount of money that you can put in an offset. It's $500,000 of taxes that the Mexican government could have, but as of trial had not, levied on the transaction itself that Nascent promised to pay that was an outstanding potential liability of the company that's never been resolved. It's the promise that there are no labor law claims under Mexican law when there were multiple labor law claims, including failure to pay Christmas bonuses, failure to pay salaries, failure to pay Social Security. So the notion that one can package this case in what an accountant said is $91,000 more than $150,000 because it's what's on the books at a given period of time, whether it's six months or three years after that closing, that puts this case in a box that is a completely unfair picture of what a creditor of Nascent did to attempt to get others to assume liability on its uncollectible, valueless debt from Nascent and in the process knew, as the district court found, all the misrepresentations that Nascent was making and went along with them in order to make an uncollectible debt collectible. That is the atmosphere this case should have. Not that Genesis Merchant Partners is a righteous creditor that has been frustrated for years. It is frustrated because it made a stupid loan to a failing Mexican business and then tried to get away to get others to pay it. And that's why we're here, because they did it by cheating and my clients are the victims of that cheating. Mr. Byrd, I'm playing my cards a little closer to the vest on this, but just taking it down the road in terms of I think you've answered, if in fact the court were to reverse on any basis, you're saying that the offset just can't be determined from the record that's before here. It cannot be determined from the record. That is a completely different trial. What about if there were a reversal on any part of it? What about the attorney's fees? If there's no judgment declaring who the prevailing party is, the attorney fees are awarded under contract in California Civil Code Section 1717. In California law, it's very well developed, and I think there are at least a couple of Ninth Circuit cases that follow this. When you vacate the judgment, you have to vacate the attorney fee award because it's not until there are no attorney fees for winning an appeal in the middle of a contract case, for winning a writ petition in the middle of a contract case. And you may incur more fees. And there may be more fees. And I think, although I don't think this case should be remanded, and I had quite a number of minutes to explain things like what I think is a travesty in the reply brief on the issue of materiality and how we have the reply brief relying on Mr. Cathcart's view of whether statements in records given to him in October were red flags that he should have paid attention to when he got representations and warranties that everything like that would be fixed the next February. There are a lot of things I could have spoken about today. I don't think it should be reversed, but if it should be reversed, the notion that any reversal can go back and say this is an offset case, I think would be a devastatingly unfair appellate remedy. My reaction is if this court thinks that the district court, I think quoting Judge Hurwitz, messed up anything as serious as whether we have a defense and an unjust enrichment case or it's strictly a question of offset, I think the only fair appellate remedy is a general reversal and a new trial. It's a five-day trial. We're not talking here about, this is not the Mattel case. We're not going to occupy a courtroom. It's almost as long as it takes to diagram this case. Right. For many reasons that I hope would be the source of the court's questions today, I think this is an affirmance. If it's a reversal, I hope the court will see the justice in a general reversal, not buying the notion that, okay, on this record we can turn it into an offset case. That's not at all what it is. Thank you. Thank you. Thank you, Your Honors. Just a couple of points that were made that go directly to the question of why the reversal is for a damages offset and not an unjust enrichment trial or anything like that. The first thing it is important to keep in mind is the district court specifically found, and you'll see that in excerpts of Record 64, that in order to be relieved of the contract, the remedy of precision, the appellee is entitled to rescind the SBA agreement upon tender of its target shares. So the district court specifically found that if they wanted to get out from the note, they have to give the company back. Would you respond to Mr. Bird's argument that California law allows a third way, if you will? You can rescind, return the money. You can get damages, which would be the offset in this case, or whatever the damages are. Or you can just walk away and keep what you got. Would you respond to that argument? That's flatly erroneous, and I'll give you two case citations, the LeClerc case and Roger Traynor's opinion, the Friedman case. And on the LeClerc case, situation just like this, purchase agreement, promissory note given to purchase, misrepresentations found within a few months, continues to keep the business, make some payments under it, but it's in default. The court held, by failing to return the business, you've waived and your sole remedy is damages.  If a person retains the benefit of a contract and continues to treat it as binding, he will be deemed to have waived any fraud and to have elected to affirm the contract. And that's, of course, what you have here. They kept the business throughout. And then later, in the next paragraph, the court says, an action for rescission is based upon a disaffirmance of the contract, whereas the action for damages is based on affirmance thereof. The two remedies are inconsistent, although damages may be prayed for in the event rescission may not be had. So how do you address cases like Friedman? Like what? Like Friedman. Friedman actually establishes the exact opposite proposition of what Mr. Byrd just argued. The whole analysis in the decision is they considered what was, at that point in time in 1951, kind of two schools of thought on this issue, that you can have a material breach just excusing performance and you sort of walk away and the breaching party is completely out of luck, or you can perform a damages offset analysis. And the trial judge in that case made the exact same mistake the trial judge did in this case, found material breach and it stopped. The California Supreme Court reversed and said, no, the rule we are adopting in California is that even a materially breaching party may recover if the other side has received a benefit under the contract and you perform a damages offset. So Friedman quite clearly disavows that sort of middle ground that's being asserted here, which you won't find in any case. I don't think anything's been cited that says that. Friedman, in fact, says, is just again in line with the damages offset analysis. So you don't even need the indemnity clause to get to the damages offset analysis, but I want to point the court to the exact language of that clause to make clear that it's 100% applicable here. The clause says that indemnity is the exclusive remedy arising out of or in connection with the SBA and shall be in lieu of any, any rights under contract, tort, equity, or otherwise. So the notion that the indemnity only applies to affirmative claims versus defenses, impossible. You couldn't draft a broader language, any rights. To the extent that that indemnity required giving up fraud claims, it would probably be unconscionable, would it not? Yes, but remember, as Your Honor pointed out. I understand, but I'm just saying that the provision itself doesn't always control. Right, but Your Honor pointed out the footnote the district court made in its opinion where it accepted the, quote, undisputed evidence that the representations were unintentional. And you also put your finger right on why there really wasn't any fraud, because you have to read the indemnity clause with the representation and warranties. All the contract is saying is if the liabilities turn out to be more, we will cover them. So to just focus on the warranties and ignore the indemnity clause is a lot like, you know, pick an example that's sort of close to home where we are here in Pasadena. An insurer agrees to insure a house in a high fire risk area. But they say, but our policy limits are 200,000. And then you have a fire that causes colossal damage well above the policy limits. And the plaintiff argues, well, our loss is well beyond so on. That's sort of the analysis in sort of shoring off the indemnity clause and focusing on the representations and warranties and calling it a fraud. The only reason those representations and warranties were made was because they were accompanied by a clause that says if you run over, we'll cover it. And by the way, the coverage is just a monetary obligation. So offsetting it against the note is the perfectly natural way of enforcing this contract. And that's another thing that's completely missing from the district court's opinion is analysis of the relationship between the indemnity clause and the representation and warranties clause. Or you won't see any discussion about the note obligations that are just being forgiven under this analysis. And I want to just conclude with one last point that was repeated a couple of times that was puzzling to me. It kept saying that they didn't sign or promise to pay anything. And I don't understand that. They gave a promissory note. Nary signed a promissory note and for that got a business. They couldn't have gotten the business without signing that promissory note. So yes, Genesis wasn't directly the recipient under that promissory note, but Genesis had to consent to that promissory note or they wouldn't get the business. So it's the functional equivalent of Nary's promising to pay Genesis under the circumstances of this transaction. And that's why the district court says to rescind, they've got to give the company back. They didn't do it. There has to be a damages offset analysis. That's the correct analysis because they affirmed the contract. Whether this court does it or revands, the court has heard me on that point. All right, thank you. Your Honor, may I request the extraordinary privilege of speaking for about 30 seconds? I've sat here and realized this is a critical point in the sequence in the district court. Sure, go ahead. I think you need to turn the microphone over to be recorded. We call it the breathalyzer. Thank you. I truly appreciate the opportunity to say this. Oh, sure. My client elected against rescission after it had won the case. Also on the controversial theory that we are discussing today, there is no way to know what my client would have done in the district court if the district court had said you win rescission and nothing else. Here's what happens next. So your election was made after the court found in your favor? Correct. And I couldn't possibly tell you today after the passage of time either what would have been done then or what we would do now if we were faced with the same choices after another two years of operation of that business. Thank you for the privilege of pointing out. Your Honor, since this is a ramming point, can I have my third question? Oh, yeah, sure. Absolutely. We want everyone to leave happy. I just want to point out that under the LeClerc decision, you don't have to wait. You're not even entitled to wait until a court rules until you elect. They discovered the fraud two months in, so rescission shouldn't have even been on the table at trial. Do you make election of remedies after the proof is in under California law? No. The obligation under Civil Code 1691 is to restore the consideration at the earliest possible opportunity. But, see, if you bring a lawsuit, can't you seek the alternative remedies of rescission and damages? No. Rescission is a remedy that unless timely exercised is gone. You can't. You're arguing that the judge should have dismissed a rescission claim, but now we're talking about stuff that's, you know. Yeah. I'm saying can't you file a lawsuit that seeks alternative remedies? You can't. And let's assume it was a timely lawsuit. You offered to give back the consideration and the other side wouldn't rescind. You bring a lawsuit and you say I'd either like rescission or damages, and when do you have to then elect? When the decision is in. When the decision is in. Right. Okay. So you may be right that they waited too long, but that's not the issue in front of us. So that's when you could argue to the trial judge but not to us because we don't have any findings on that. Yeah. It is the issue in front of you in this sense. What Mr. Byrd was arguing for is an opportunity to elect again. To give you back the company. Right. Again. And think about that. But his point, and I'm sorry to the other people who've had to wait. I know I've extended this. His point is he made that election after the trial judge said to him and your alternative is to keep the company and not pay. And nobody but an idiot under those circumstances would give the company back. Well, I would urge the court to take another look at the statement of decision because I don't think it said that. It says on page 45 of the excerpts of record we're not reaching the damages claim because I'm awarding rescission. Well, what the judge says is you can either give the company. I think the judge says, look, there's been fraud. You can give the company back and walk away from this deal and they can give you back the $40,000 or so you've paid. Or you can keep the company and not have any obligation. That's the choice the judge gave your opponent, is it not? But think about that. The first choice is not any different from the second except their obligation under rescission is not there. So I don't think that's a fair reading of the statement of decision. The fact that your opponent elected not to give back the company under those circumstances speaks well of his intelligence. It speaks well of his intelligence or one could say it's an overreach because I don't think that's really in it. If you look at page 45 of the statement of decision, the court is saying I'm giving you rescission. It's not saying you can keep the company and owe nothing. It's saying I don't need to do this damages offset because I'm giving rescission. So they sort of took an inch and ran. And so to give them the option back is a forfeiture. So if you're over your 30 seconds. Thank you. You want to say another word? I just so much appreciate you having done that one piece of procedure. Go ahead. Go over there. I do not want to try the court's patience. I so much appreciate as an athlete being allowed to speak twice when I realized I had messed up and not gotten that critical piece of procedure into the process. So thank you. And I had no idea that I would be here arguing on the day before your Honor took the senior status. That's a special honor too. All right. We're going to take a recess. In the meantime, all of you who are in the room, we're going to distribute a bar exam question based on this case. And we'll see what the passage rate is. Okay.
judges: Pregerson, Callahan, Hurwitz